UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES M. G.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Cause No. 3:20-cv-00127-GCS[2] |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

**PROCEDURAL HISTORY**

Plaintiff applied for benefits in October 2018, alleging disability beginning on October 24, 2017. After holding an evidentiary hearing, an Administrative Law Judge ("ALJ") denied the application in October 2019. (Tr. 13-22). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1).

---

[1]    In keeping with the court's usual practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2]    This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* (Doc. 9).

Administrative remedies have been exhausted, and a timely complaint was filed in this Court.

**ISSUE RAISED BY PLAINTIFF**

Plaintiff raises the following issue:

1.      The ALJ erred by failing to account for deficits of concentration, persistence, or pace in the Residual Functional Capacity ("RFC").

**APPLICABLE LEGAL STANDARDS**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four.

Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He determined that Plaintiff had not been engaged in substantial gainful activity since the

alleged onset date. He was insured for DIB only through September 30, 2019. Plaintiff was thirty-three years as of the date last insured.

The ALJ found that Plaintiff had severe impairments of bipolar disorder, anxiety disorder, and obsessive-compulsive disorder.

The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform work at all exertional levels, limited to routine and repetitive tasks with no production requirements such as an assembly line; only occasional interaction with coworkers; and no interaction with the general public.

Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff was able to do his past relevant work as a binder operator. He was also able to do other jobs that exist in significant numbers in the national economy.

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.

### 1.    Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in October 2019. (Tr. 28). Plaintiff had been a jet engine mechanic in the Marine Corps. (Tr. 44-45). Plaintiff received disability benefits from the Veterans Administration ("VA").[3] (Tr. 32).

Plaintiff testified that he was unable to work because it was "extremely difficult to focus and concentrate." He thought that was because he was tired all the time. He was

---

[3]    The VA disability finding is not dispositive for purposes of social security disability. *See Bird v. Berryhill*, 847 F.3d 911, 913 (7th Cir. 2017).

tired from medication, or from not sleeping, or from "worrying so much and being mentally exhausted." He had a hard time following written or verbal directions. He had a hard time finishing anything. He would lose concentration because he was always worried about something bad happening. (Tr. 32-34).

Plaintiff was treated at a VA facility. The ALJ pointed out a psychiatrist's note from July 2019 stating that Plaintiff was very happy with the reduction in his anxiety and obsessive compulsive disorder ("OCD") behaviors. Plaintiff explained that, when he was bad, he would check the locks on the doors fifty to seventy times a day. In July 2019, he told the doctor he was doing better because he only checked the locks ten to fifteen times a day. But, in the few months before the hearing, the doctor took him off Paxil and he noticed a gradual increase of symptoms. For example, Plaintiff would check the faucets and doors repeatedly. He also checked the gas stove repeatedly and checked to make sure the lights were all turned off. Sometimes checking all these things took up half or more of his day. He had trouble with his memory, and the VA wanted him to start attending a memory loss group. (Tr. 38-42).

A VE testified that employers generally do not tolerate employees being off task for more than fifteen percent of the workday. (Tr. 47).

### 2.      Medical Records

Plaintiff received healthcare at the Veterans Administration Medical Center at Jefferson Barracks ("VAMC-JB").

Plaintiff reestablished mental healthcare at VAMC-JB in January 2017. He had a 100% service-connected VA disability rating based on his obsessive-compulsive disorder.

He served in the Marine Corps from 2005 to 2009. He was diagnosed with bipolar disorder in 2008. He was last seen at VAMC-JB for mental healthcare in 2012. He was taking psychotropic medications prescribed by an outside provider. He reported symptoms of obsessive hand washing, list making, checking door locks, racing thoughts, and anxiety in social events. He reported hypomanic periods with decreased sleep and periods of mild to moderate depression. (Tr. 325-332).

Plaintiff was seen for psychotherapy sessions throughout 2017. (Tr. 337-342).

Plaintiff saw a psychiatrist at VAMC-JB throughout 2018 for medication management. (Tr. 349-354, 360-368, 372-381). In April 2018, he reported increased stress. He had not come out of the house until a month ago, had stopped going to therapy, was having memory problems, and had become more irritable. (Tr. 378). In September 2018, he reported worsening obsessive-compulsive behaviors, increased anxiety, and inability to sleep. He had a panic attack in Wal-Mart and rarely left the house except to go grocery shopping. (Tr. 366). In December 2018, he felt his obsessive-compulsive behaviors were slowly getting better on medication. (Tr. 352).

In January 2019, Plaintiff told a VA psychiatrist that he was doing "really good, way better. . . . the best I've been in a long time." He was "only" checking the locks about ten times a day, down from forty, and was not checking the gas. He still had trouble with sleep. He was slated to try Ambien. On exam, attention, concentration, and memory were normal. (Tr. 346-348).

In July 2019, Plaintiff was happy with his reduction in anxiety and OCD behaviors, but he reported memory problems. The psychiatrist noted this could be due to his

medications and recommended a decrease in clonazepam (Klonopin). However, if his anxiety worsened, the psychiatrist noted he might have to increase the dosage again. If the reduced dose did not improve his memory, the psychiatrist would consider a referral to neuropsychiatry. (Tr. 669-670).

There are no medical records after July 2019.

### 3.     State Agency Consultants' Mental RFC Assessment

In March 2019, acting as a state agency consultant, Howard Tin, Psy.D, assessed Plaintiff's mental RFC based on a review of the record. He used electronic versions of the agency forms that are commonly used for this purpose, the Psychiatric Review Technique ("PRT") Form and the Mental RFC Assessment Form. (Tr. 102-103, 104-106). On the PRT Form, he indicated that Plaintiff had moderate difficulties in interacting with others and in concentrating, persisting, and/or maintaining pace. On the Mental RFC Form, he answered "yes" to the question "[d]oes the individual have sustained concentration and persistence limitations?" Under that section of the form, he rated Plaintiff as "moderately limited" in ability to carry out detailed instructions and in "ability to maintain attention and concentration for extended periods." Dr. Tin also answered "yes" to the question "[d]oes the individual have social interaction limitations?" He found that Plaintiff was moderately limited in ability to interact appropriately with the general public.

In the subsections for explanation under the above sections, Dr. Tin wrote "[s]ee below." In the last section of the form, entitled "MRFC-Additional Explanation," Dr. Tin wrote, in part, "[c]laimant has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the

person is capable of performing simple tasks." (Tr. 105). He also wrote, "[c]laimant is capable of performing one and two-step tasks." (Tr. 106).

About two months later, a second state agency consultant agreed with Dr. Tin's opinion. (Tr. 114-116, 117-119).

## ANALYSIS

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)(collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE. In most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. The Seventh Circuit has been very clear that a limitation to simple instructions or simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace. "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that Plaintiff had moderate limitations in two of the four so-called paragraph B criteria, *i.e.*, interacting with others and maintaining concentration, persistence, or pace. He made this determination at step three of the sequential analysis when determining whether Plaintiff's mental impairments meet or equal a listed

impairment. He noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." (Tr. 17).

The ALJ concluded that the findings of Dr. Tin and the second state agency consultant were "persuasive as they are supported by and consistent with the medical evidence [of] record for the reasons discussed in this decision." (Tr. 20).

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra,* a case decided in 2009, the Court observed, "[t]he Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *See O'Connor-Spinner*, 627 F.3d at 620; *Yurt*, 758 F.3d at 857; *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019).

Here, the ALJ limited Plaintiff to routine and repetitive tasks with no production requirements such as an assembly line; only occasional interaction with coworkers; and no interaction with the general public. That is not sufficient to account for a moderate limitation in maintaining concentration, persistence, or pace. "More to it, observing that a person can perform simple and repetitive tasks says nothing about whether the

individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). The Seventh Circuit put it succinctly in a recent case:

> As we have labored mightily to explain, however, the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace. . . . Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be.

*Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020).

The ALJ in *Martin* adequately accounted for deficiencies in maintaining concentration, persistence, and pace by limiting the plaintiff to jobs that involve "only simple tasks with low stress, occasional changes, a flexible pace, and superficial interactions with others." *Martin*, 950 F.3d at 373. Similarly, in *Burmester*, the Seventh Circuit found no error where the ALJ limited the plaintiff to "simple, routine, repetitive tasks requiring only simple work-related decisions with few changes in the routine work setting and no more than occasional interaction with supervisors, coworkers, and the general public." *Burmester*, 920 F.3d at 509. The reviewing doctor in that case "stated in the 'Statement of Work Capacity' portion of his assessment that Burmester had the 'ability to understand, remember and carry out simple instructions subject to physical limitations,' that 'maintaining concentration and attention should be manageable' and that she 'should be able to withstand routine work stress and adapt to typical job site changes.'" There was no checkbox indicating a moderate limitation in ability to maintain concentration, persistence, or pace. Indeed, the Seventh Circuit distinguished the case from *DeCamp* precisely on that basis. *See Burmester*, 920 F.3d at 511-512.

Seventh Circuit precedent does not require the ALJ to use specific words to express a claimant's limitations in maintaining concentration, persistence, or pace. The Seventh Circuit, however, explained what was required when it stated the following: "[w]e decline to provide a glossary of adjectives for use in RFC determinations. What we do require—and our recent precedent makes plain—is that the ALJ must account for the 'totality of a claimant's limitations' in determining the proper RFC." *Martin*, 950 F.3d at 374.

Here, both state agency consultants checked the box to indicate that Plaintiff has a moderate limitation in "ability to maintain attention and concentration for extended periods." The consultants further wrote in the narrative explanation that he has "difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the person is capable of performing simple tasks." The ALJ found their opinions to be persuasive, but his assessment does not account for Plaintiff's difficulty in maintaining attention and concentration for extended periods. The limitation to routine and repetitive tasks is not sufficient for the reasons explained in the cases cited above, *i.e.*, the complexity of a task is not related to the ability to stick with the job for a full shift. While the limitation to no production requirements such as an assembly line does address difficulties in maintaining pace, it does not address attention and concentration. *See Martin*, 950 F.3d at 374; *Varga* 794 F.3d at 815. The Seventh Circuit reiterated this point when it stated: "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace."

*DeCamp*, 916 F.3d at 676.

The Commissioner devotes a portion of his argument to reviewing the medical evidence to show that the evidence demonstrates that Plaintiff has few if any mental limitations. (Doc. 18, p. 3-5). That argument, however, ignores the reality of the ALJ's decision. The state agency consultants opined that Plaintiff has difficulty maintaining attention and concentration for extended periods, and the ALJ said that he found those opinions persuasive. That the Commissioner's after-the-fact review of the evidence leads him to a different conclusion is irrelevant. *See, e.g., Hughes v. Astrue*, 705 F.3d 276, 279 (7th Cir. 2013)(noting that "[c]haracteristically, and sanctionably, the government's brief violates the *Chenery* doctrine. . . ."); *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010)(stating that it is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision. . . .").

The Commissioner also relies on *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). There, the Seventh Circuit rejected the plaintiff's argument that it was error to omit a reference to a moderate limitation in concentration, persistence, or pace from the RFC assessment and hypothetical question where "according to the medical evidence, his impairments surface only when he is with other people or in a crowd." *Jozefyk*, 923 F.3d at 498. That case, however, is distinguishable from the case at hand on that very basis. The Seventh Circuit explained its holding in *Jozefyk* in a later case:

> In closing, we owe a word to the Commissioner's reliance on our recent decision in *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). We do not read *Jozefyk* to save the shortfalls in the ALJ's analysis here. In *Jozefyk*, we determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in his capabilities related to concentration, persistence, or

pace, and the medical evidence did not otherwise support any such limitations. 923 F.3d at 498. As the Commissioner concedes, the facts here are different. The medical evidence plainly shows, and the ALJ recognized, that Crump suffers from CPP limitations.

*Crump*, 932 F.3d at 571. Here, of course, Plaintiff testified that he had difficulty focusing and concentrating.

The Commissioner fails to address the central point here, which is that, based on the state agency consultants' opinions, the ALJ found that Plaintiff has moderate limitations in maintaining concentration, persistence, or pace, but failed to account for that limitation in the RFC assessment and the hypothetical question.

The ALJ's error requires remand. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012)(internal citation omitted).

This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff was disabled during the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

CONCLUSION

The Commissioner's final decision denying Plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATE: August 25, 2020.**

Digitally signed
by Judge Sison 2
Date: 2020.08.25
13:10:43 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**